My name is Beverly Martin and Judge Rosenbaum and I are delighted to have Judge Boggs with us here from the Sixth Circuit. He hails from Kentucky and he's been kind enough to visit with us, I think maybe this is the fourth time, to help us with our work. And this is not really an honorary position. It comes with work assignments, which Judge Boggs is very conscientious about. So we're grateful to you for being with us. You all know our lighting system, I assume. Red means stop. I'm gonna try to enforce that. Otherwise, and you, our clerk has got your timing request plugged in, so otherwise I think you'll know where you are in your argument. And with that, we're ready to call the first case, United States v. Steven Sholly. May it please the court, Mr. Sholly's case was a one-count indictment. The government charged him with a conspiracy to distribute a quantity of marijuana under 841B1C. There was no specific quantity of marijuana charged. He was charged in a conspiracy alleged to have occurred between January of 2014 and June of 2017. He pled guilty. I think the court should notice that there was no statement of facts in the case, although that is customary in this district. Mr. Sholly admitted that he did, in fact, distribute marijuana during this timeframe. He had admitted as much to the agents when they executed the search warrant at his house. He initially gave some statement about the involvement of the co-defendants. There were nine co-defendants in the case, none of which went to trial. So when the case came to sentencing upon Mr. Sholly's guilty plea, there was no large-scale seizure of drugs in the case. There were some money laundering counts against the other co-defendants and some amounts of money that had been wired to pay for the marijuana, but no large-scale seizure of drugs. That left the court in the position where it had to estimate the drug quantity. The law, as I understand it, Judge, district judges are allowed to do that, right? I mean, a lot of times these cases are indicted as a, quote, dry conspiracy, and so the law permits judges to do that, but your objection is that what the judge didn't make sufficient findings about how he got to the number. That's part of it, Judge. The hearsay that was admitted at sentencing must be reliable. That's the big question in the case. Was the evidence that was used to calculate the drug quantity reliable? Because I take it the calculation, as I saw it at bottom, was six pounds a week times at least 40 weeks plus 20 pounds for afterwards from the shipments to Johnson. So there's nothing wrong with the calculations, right? That time frame. It's the reliability of the calculations. The time frame was contested. It was contested, but I'm saying sometimes, sometimes we get cases where we don't think the judge did the math right, but the math here is okay. The question is the time frame during which these six-pound shipments were being made. Is that fair? Yes, Your Honor. That is correct. That time frame was this cooperating co-defendant statement. That cooperating co-defendant never testified before the court. That's how this court can distinguish this case from the cases where the district court was not required to make factual findings. That case was United States v. Gordon. This circuit said that the court's not always required to make factual findings when the reliability is apparent from the record, and reliability is a due process concern here. Even before the guidelines, this court had held, and it's acknowledged in United States v. Gertler that a defendant has a due process right not to be sentenced on unreliable evidence. Well, you have conflicting evidence is what you're saying. The FedEx records don't And we also have some assumptions on behalf of the district court. The co-defendant never made any specific statements about the time frame when the packages began being mailed, and that is not consistent with what this court has found to be reliable without necessitating factual findings. What is the case law? It is consistency between statements of people and corroboration of that evidence. There was neither in Mr. Sholley's case. The co-defendant's statements were not consistent with any of the other evidence in the case, and they were not corroborated. You said he was shipping six pounds, and they had lots of boxes with six pounds. I mean, to me, the question is the time frame of how often were these six-pound boxes shipped, that there are records of certain FedEx packages which corroborate that, but they're not records to corroborate that many shipments. Again, is that fair? Yes, Your Honor. The time frame is the issue. The frequency of the shipments is the issue. Okay. And so — I'm sorry. Go ahead. Go ahead. So just to be clear, had Mr. Sindeluk actually testified personally and this had not been hearsay, then we wouldn't have this problem. Is that what you're saying? Yes, Your Honor. Okay. So the problem is that we don't know how accurate the agent's recollection of what Mr. Sindeluk said was, and we also don't know whether Mr. Sindeluk was honest with the agent because we have no way of judging Mr. Sindeluk's credibility, which is why we need to have corroborating evidence. Is that what your argument basically is? That is it, Judge, and you hit on an excellent point, and that is the district court had no opportunity to observe the witness in this case to judge credibility. It had to rely on the agent. There was no chance for the district court judge to put his eyes on the witness. If you look at the other cases the court has upheld these types of findings, there was some type of trial testimony or testimony at another hearing of the witness on which the drug quantity finding was based. In one case, the Castellano case, it was the defendant's own testimony at a co-defendant's trial. In Gordon, the case where this court said that factual findings were not required, you had three co-defendant statements that were all consistent, and the district court told the defendant that they were available to testify. All this factors into the three-part test this court has used, which is really all about reliability. Was there sufficient indicia of reliability? Were there explicit factual findings, and was there an opportunity to rebut? I submit to the court that there was not any of those things. With respect to the latter, Sindelic could have testified, could he not? He could have said, oh yeah, I only started getting these things in April or so, or in March, because the boxes, as I read the record, the boxes corroborate one a week or close to one a week for the period recently before the seizure. Is that fair? Yes, Your Honor. Could have said, you know, he'd already been convicted, so he's not a self-incrimination problem. He could have said, no, no, I only started getting these at such-and-such a time. Not that he's obliged to, but when we're looking at contradiction, let's say, Mr. Sholley had made a statement that is in the pre-sentence report that he had started receiving the packages when Sindelic moved to California. That's what they relied on, in fact, because Sindelic, at least according to Sindelic, they moved in July, almost a year previously, right? Correct, but that's different. Sindelic's statement in the pre-sentence report is that he moved in July. Sholley's statement is, ah, six months or so ago. He doesn't give an exact date, but... Sholley's statement is consistent with the FedEx records in October of approximately six months. Well, the twelve shipments that you're willing to cop to, you might say, I guess the earliest of those is in October. Is that right? Yes, Your Honor. So October through April would put you at seven or eight months or so. Is that... At a different frequency than Mr. Sindelic told the agency. There's a statement, there's a statement in the various briefing, I think from your side, that Sindelic said they only used FedEx and I did not, I did not see an only. There's some reference to using UPS for other things, but do I read the record right that there's no affirmative statement of using UPS, but I didn't find an affirmative statement that we only used FedEx? My understanding is that in the PSR it states that there were two addresses that Sindelic shipped the packages to via FedEx. One was Mr. Sholley's neighbor and another was an address in Pace. I don't know, again, because he never testified how specific that statement was. And whose burden would it be to prove that they were shipped by something other than FedEx? It would be the government's burden to prove the drug quantity. I don't know. So to prove the drug quantity, would they, I mean, if they're, if they have to corroborate his testimony, even assuming that he did say UPS, which we don't, I don't think he did, but if, just even assuming that the agent said that Sindelic said he used UPS, there would still need to be some kind of corroboration of that, or some kind of indication of its reliability, right? Or some finding on the record by the court of why. And if you look at the Lee case, it was remanded for additional factual findings about credibility. Footnote 10 in the Lee case explains what those could be, and it could be additional evidence corroborating the statements. One final point I would like to make is that Sindelic's statements were also inconsistent with one of the other co-defendants as it came to how many shipments occurred during the later time period when Mr. Sholley returned. That statement's referring to Marcellonis? Yes, Your Honor. But wasn't the inconsistency is that Marcellonis said there was much more. So if you, if you say, well, there's an inconsistency and we could look at the inconsistent side, you'd be in much worse trouble. Sindelic's better for you on that. Marcellonis gave a wider range, Judge. He said that sometimes it depended on how much money Mr. Sholley had. But if you took even the low end of what, of all of Marcellonis' ranges, you come up with more than, than Sindelic said. At least that's the way I read the record. Again, we don't have a time frame for those statements. Mr. Marcellonis never testified to the court, and there was nothing to corroborate that. Thank you. You've saved you some time for rebuttal, so we'll see you again. Mr. Butler. Good morning, Your Honors. May it please the Court. Steve Butler for the United States. In listening to the discussion that Your Honors had with my colleague, Mr. Theresa, there are a whole number of points that came up in that discussion that I would like to address, if I may. But I will point out maybe the most obvious issue, which is a matter of form, about our standard of review here, which is clear error. I mean, this, Your Honors, would have to be left with a definite and firm conviction that Judge Vinson made a mistake in this regard, and we would submit to you that the appellant could never win under that standard. Second of all, Judge Boggs, you just raised a question, kind of taking the more recent discussion and moving backwards. I would submit to you that that evidence that Mr. Theresa was talking about, about the FedEx packages, I don't believe that Mr. Sindelic ever said that those two addresses that were used were the exclusive addresses at all. And if Mr. Sindelic said that, that's not our understanding, you know, of what the sentencing hearing was that we were not at all confident that we had all of the addresses controlled by Mr. Sholley during the course of his involvement in the conspiracy. Did the AUSA present any evidence of other addresses where shipments were made to Mr. Sholley? We didn't, Your Honor, because we didn't have those other addresses, unlike the other defendants in the case where we had more confidence in where they were situated, where the shipments were going, the money shipments coming back out. But just to follow up on Judge Rosenbaum's point, I mean, the burden was on you, right? Correct. Yes, Your Honor. And did Judge Vincent make any explicit findings about the reliability of the hearsay? To put a fine point on it, to answer your question, right. In general, the decisions of this circuit in the beginning were that the judge should, you know, hearsay, the judge should make an explicit credibility finding and give the defendant an opportunity to rebut. And did that happen here? The judge did not explicitly say it, for example, in so many words, you know, I hear by a fine. Exactly. No, the United States would concede that. However, we don't ultimately concede the point because the case law, as it's developed over the years, and Mr. Theresa made some reference to that, the Gertler case, the if that doesn't happen, is the record otherwise sufficient to demonstrate reliability? Is the evidence materially consistent? Is the evidence reliable? There was a, in this case, just to put it in perspective, there was a really a good exchange between our AUSA and Judge Vincent about the reliance on information was corroborated, and I can talk about the corroboration because that did come up in the discussion with Mr. Theresa. Let me take you to your first point, if you don't mind. Sure. Would you agree that in order to show clear error, if there is an error of law, that would suffice? An error of law? Yes. Like, if there's an error of law in reaching the fact, in how the factual findings are reached or actually not reached in this case, would you agree that that suffices to satisfy the clear error standard? I believe that if the district judge, in making its quantity determination, applied the wrong law, I believe that that would be the case, hypothetically. That didn't happen in this case. What I'm saying is, if the district court did not follow the law as to how to arrive at the quantity, wouldn't that be, wouldn't that be an error of law that causes any kind of factual findings that result from the process used to be clear error? I think it probably, under our case law. Yes, Your Honor, I believe that it would, in the general sense, although I've never viewed this case as raising that type of concern because, you know, I would submit to Your Honors that the Judge Vinson followed the law scrupulously in this case. This defendant was the the seventh defendant to be sentenced by Judge Vinson among all the co-conspirators. Mr. Sindelic had already been sentenced. Judge Vinson was very familiar with this case from the beginning. He handled this case from A to Z. And that is, I think, really,  Did Sindelic say anything at his sentencing? I'm sorry, Your Honor. If this was all before Judge Vinson, did Sindelic say anything relevant or his counsel at his own sentencing? Is there any carryover from that sentencing? Your Honor, Mr. — I don't have a specific answer to that question, although knowing that Mr. Sindelic was sentenced the day before by Judge Vinson, Mr. Sindelic received a substantial assistance reduction based on the government's motion under 5k1.1. There were two or three other defendants in the case who did. Just — and as Your Honors know and experience — But neither Mr. Sholley nor his counsel was at Mr. Sindelic's sentencing. Were they? I don't believe that they would have been at that sentencing. Right. I don't know for sure. They could have been sitting in the gallery, but I — And the district judge did not say that he relied in any way on anything that That is correct. So we can't really rely on that then, can we? No, but I appreciate that, but I do think that it's important from a practical standpoint to when we talk about judicial deference, you know, that this is a judge who was very well-versed in this case from the beginning. And I have no doubt about that, and I have tremendous respect for Judge Vinson, so that's not what this is about, but we still have to follow the correct procedure. And so maybe you could focus on why — first of all, do you agree that there had to be some kind of either reliability finding or corroboration or something other than speculation with respect to the evidence concerning Mr. Sindelic and his testimony — well, not his testimony, his statement to the agent, so the agent's testimony about what Sindelic said regarding Mr. Sholley? Yes, Your Honor, and I would also submit, though, that that was followed and satisfied in this case. And so can you — maybe it would be helpful to me if you could tick off exactly how that was corroborated or there was a demonstration of its reliability. Certainly. So what you have in this case is that you've got the statements by Mr. Sindelic, and then the question is were those corroborated either through documentary evidence, items that were seized, or witness statements? You had all of that. In this case, you have items that were taken during the search warrant, which showed that there was a large-scale, you know, ongoing marijuana operation. So that's true, except that I don't see how that shows — I mean, from what I read about that, it looks like there were three dog beds that were recovered, but there had been three deliveries that month, which would have included a dog bed each, even by Mr. Sholley's testimony. So I agree that the search warrant backs up the idea that this was an ongoing conspiracy, but Mr. Sholley pled to that. How does that show us that Mr. Sindelic's testimony concerning deliveries that allegedly occurred before the 12 that are verified by FedEx occurred? Yes, because you have to look at the specifics of what Mr. Sindelic told us. He told us that he had been involved with Mr. Sholley since as early as 2013, that Sholley typically received six-pound packages, typically, you know, one to two times a week. And that was certainly up until the case, up until the time of the search warrant at Mr. Sholley's residence, which was in April of 2015. Okay, so I'm sorry to interrupt, but I just want to make sure that we're on the same page. Sure. So I understand what he said, but what I'm not seeing and what maybe you can help me see is how that shows that more than 12 deliveries occurred and that they occurred from the time that Mr. Sholley said they occurred until the FedEx records pick up. So I know what Mr. Sindelic said. I just don't know how it, how the other evidence corroborates that. Right. Because you had evidence from Sholley himself that he was dealing with six-pound packages with dog beds. You had information from Sholley himself that he had had ongoing dealings with Mr. Sindelic going on prior to the time that Sindelic had moved to California in July of 2014. You had information from Marcelona. Okay, you also had information from Mr. Sindelic about Mr. Johnson. You had information from the Brownells. You had information from the trash pulls, which we're not going into in great detail in the precedence report or fleshed out. But if you put all of that information together, you've got a common denominator. You've got trash pulls. You've got the search warrant. You've got information from Marcelona. And then, of course, all that corroborates what Mr. Sindelic told us, which is if you take all of the information, what it distills down to and where they were consistent, which I think is Your Honor's question. Great. And I'm not trying to be difficult. I just, so the trash pulls, there were three of those that occurred, but they occurred during the I don't see how the trash pulls show in any way that the conspiracy or that deliveries were made of drugs to Mr. Sholley prior to the FedEx records time. And with respect to the FedEx records, I don't understand also the government's argument that they're not complete because my understanding from reading through the record is that the records for FedEx were obtained for the two-year period or could be obtained for only the two-year period from which they were requested, but they requested in May of 2015. And if Mr. Sindelic didn't move until July of 2014, it seems like that period would have been covered. So that's why I'm having this confusion. Let me, I'll answer that last question first, if I may. Of course. Thank you. If you accept the idea that those 12 FedEx packages were accurately reflected the entirety or scope of Mr. Sholley's involvement in the conspiracy, then what you would have to accept is that he was only receiving packages within an eight-month period. Actually, if you look at the records in this regard, you've got two different sets of FedEx records. The first ones were Sholley's search warrant in May of 2015, and that yielded seven packages sent to Ms. Rector's address, which was the next door address. Those, and Judge Boggs touched on this earlier, that encompassed only a six-month period from October of 14 through April of 2015. So was the reason that it encompassed as only as early as October of 2014 because that's when the records were requested for, or is it because that's when the first shipment showed up on the records that were requested for the prior two years? I believe that, as I understand it, that it was just simply a matter of us subpoenaing those records, and that's all that we got based on that particular address. Did I misunderstand the testimony below from what I thought was the government saying that the records could be obtained, that FedEx had records only for two years from when you requested them? Generally, yes, yes. So I did not misunderstand it? No, that is what we said, and we explained it because Judge Vinson asked that question, and we didn't have complete confidence that the records would go back any farther than generally that time period. Those first set, those were all the ones that were sent to Pace, Florida? Those were sent to the ones, Your Honor, the ones that I just described for Judge Rosenbaum were the first seven of the 12. Right. Right. And they were the ones sent to Pace, Florida. Is that right? Yes, sir, and those were requested about two years later because those, because if you look at the date stamp on when they were generated, it said July of 2017. Obviously, the requesting of subpoenas for these records for all defendants was a rolling process. I think we could all understand that. The investigation was about two and a half years total. But those records, the second set of records for Pace were covered July through September of 2015, which is only two months. So the reason why Mr. Schley, and he was situated a bit differently. We didn't have good addresses for him. Unlike the other defendants. You said that second, that second set you said were Pace. Yes. I thought those were the ones. Yes. All right. Those are the ones that lodging circle on Pace. Yes, sir. That is not Ms. Rector. That was this Rubin guy. Well, there were all kinds of names that were used. Several of them were Rubin. Yes, sir. Yes, sir. So it wouldn't have been right. Mr. And I see my time is running short. There's a lot more that I could say. But Mr. Judge Vincent understood that Mr. Schley would have received a windfall by only being accountable for 12 packages during an eight month period when we had strong evidence that he was actually involved in ongoing, regular, systematic, conspirational conduct with six pound packages at least one to two times of week going back as early as 2013. We couldn't allow him to have that kind of windfall. The scope of the records that we were able to get for the other defendants were much more in line with what we understood the scope of their involvement to be. That was not the case with Mr. Schley, which is why we didn't travel on those 12 packages. Thank you. Sure. Thank you all. May it please the court. The idea that the FedEx records for Mr. Schley don't encompass the entirety of his participation in the conspiracy is based on speculation. In the pre-sentence report, paragraph 42A, it says that according to Send-Elect, Schley's packages were usually sent to an address in Pace via FedEx to his neighbor, Lauren, Rector's residence. There was no other information about where packages might have been sent, what other packages may have existed. Send-Elect didn't provide it. He wasn't called to testify. Counsel, let me try to follow up on that. We've clarified that there were seven before the time that their FedEx records for seven packages before the time of the search warrant. And I think those are the ones that are being referred to in 42A, or may well be, and those were sent to Ms. Rector. Now, the post-search packages, and I have the shipments for those, all seem to have gone to a different name and address on lodging circle in Pace. Is that correct? The Lauren Rector address is not in Pace, Judge. It was next door to Mr. Schley's. So that's a mistake in 42A. I think there are two addresses. So the Pace ones, though, I thought he said they didn't ask for those records until 2017, which is why those may start up in 2015. Is that fair? That may be, Judge, but we would be, you know, speculating on what happened before then. I understand, but I'm just asking, is that statement correct? They weren't requested until 2017. They're two sets, two separate requests. There's no way to be sure that that is the Pace address that was even being referred to by Mr. Sindelik. It's certainly the only Pace address and the only mention of a Pace address in the conspiracy, the only records that were subpoenaed, but there was no testimony before the district court about it. But you're saying, in fact, Rector's address is not in Pace. It's in Pensacola. Yes, you are. Thank you. I am. The government used the FedEx records for every single other co-conspirator in the case except for Mr. Sholley. Why those records were not found to be reliable for Mr. Sholley is something that this Court is forced to speculate on, and that's why explicit factual findings should have been required. Thank you. Thank you. Mr. Tereza, we understand you are CJA appointed, and we appreciate your service to the Court as we do those from the U.S. Attorney's Office. So, thank you, Mr. Butler, as well. Thank you. Oh, we're ready if you are.